May it please the court. My name is Shahid Haque on behalf of the appellants. Yesenia Equihua-Equihua was in deportation proceedings and she was married to a U.S. citizen spouse. And in those circumstances, the question of whether you were inspected and admitted into the country is very important. If you were inspected and admitted and you're married to a U.S. citizen, you have the option to adjust your status and get a green card. The government was alleging in its notice to appear, which is the charging document in immigration court, that she was not inspected and admitted. In other words, that she had entered the country illegally. And we challenged that allegation and therefore the judge, immigration judge, set it up for a contested charge hearing in which the issue that we're contesting is gone through and explored. And ultimately there was examination, cross-examination, closing arguments, and there was a final decision by the immigration judge that, in fact, my client was inspected and admitted into the country. And I won't go into all the nuances of the particularities of immigration law as to why, but there were different factual issues explored in the nature of her admission and the fact that she was waved through at the border. And ultimately the judge found her testimony to be credible and consistent and ruled in her favor. So at that point, the Department of Homeland Security had the option to amend the charges in the complaint and say that she was inspected but that she has no valid immigration status now and therefore they still wanted to deport her. They could have amended those charges, but they chose not to. And having chose not to amend the charges, ultimately the immigration judge was forced to just terminate the proceedings. That's significant because had the government amended the charges, she could have sought a green card with the immigration court. She could seek adjustment of status right there in court with the same fact finder that found that she was inspected and admitted. But the government chose not to amend the charges and therefore removal proceedings were terminated. At that point, the only option to pursue a green card would be to apply with U.S. Citizenship and Immigration Services and just apply for the green card, which we did. And ultimately they denied the application for the green card based on their assertion that despite what the immigration judge said, they don't agree with it. She was not inspected and admitted in their view because they didn't find her credible about that fact. So now at this point, typically after the denial of an I-485, you might go back to immigration court, but that would require the issuance of a notice to appear. And the government had already indicated that they didn't want to go to court on the issue that she was inspected and admitted. And they don't have to issue a notice to appear if they don't want. And so we're basically in limbo. So we filed a writ of mandamus, kind of extraordinary remedy but necessary in this case. Upon the filing of the writ of mandamus, the Office of Immigration and Litigation takes over the case and they reviewed the pre-litigation conduct and ultimately came to their own conclusion that they wanted to agree with us to jointly hold the case in abeyance with the district court on this writ of mandamus. They're the ones who asked to hold the case in abeyance, and they wanted to remand with the caveat that they would no longer deny it based on the fact that she wasn't inspected and admitted. They would admit she was inspected and admitted. That to us was the victory we were looking for. We wanted them to decide that adjustment of status application assuming she was inspected and admitted. And that was what they refused to do. That was the basis of the earlier denial. So the fact that we jointly asked the judge to hold the case in abeyance, the judge held the case in abeyance with a judicial order, that in and of itself is, in our view, provides us with prevailing party status because it was a material alteration of the relationship between the parties that was judicially sanctioned in the form of an order, in that case an order to hold the case in abeyance. But never mind that order and the subsequent one to also hold it in abeyance, ultimately she was granted a green card and there remained some different issues to be resolved. But the parties submitted a consent decree, and in that consent decree it memorializes all of our different agreements throughout this entire litigation. And the judge entered that consent decree, and that consent decree further stated that it was enforceable. The judge hand-wrote through a separate action, but nevertheless enforceable through a separate action. In our view, we were the prevailing party because at this point the relationship between the parties has been altered, whereas before they said she wasn't inspected and admitted, now they admit she was inspected and admitted, and now at this point she has a green card, she's been granted the green card, whereas before she was denied. This was exactly the relief we were looking for. So we applied for attorney's fees. We believe that the consent decree, which memorialized the agreement between the parties and was entered by the court, stamped it with the necessary judicial imprimatur to show that the judge had reviewed, understood the agreement, and found it fair, and therefore we applied for attorney's fees. The district court denied those fees primarily because, even though it acknowledged the relationship between the parties was altered, the court seemed to find that the result wasn't compelled by its own action, that it was concerned by the fact that the parties had agreed amongst themselves to this relief and that the court merely memorialized it with an order. But those concerns, I believe, are unfounded under Ninth Circuit precedent, because under Ninth Circuit precedent, under Lee and Carbonell and Rueda and all of its progeny, there are several cases in which the Department of Homeland Security agrees to remand or the Ninth Circuit mediator remands or different instances of remands themselves as long as the order is entered by the judge, even if the parties have agreed to remand. When the court enters an order memorializing that agreement to remand the proceedings and then you ultimately get the relief you're looking for, that has been sufficient. It's not required that the court order the parties against their will to enter into an agreement. It's sufficient that a consent decree memorialized by a judicial decree is sufficient. And with regard to the substantial justification issue, that is really the government's burden to prove that its conduct was substantially justified. Assuming we obtained the relief we were looking for and that the judge stamped it with the judicial imprimatur necessary to confer that prevailing party status, the government must prove that it was substantially justified. Here, there is simply no case law indicating that USCIS can reach a different decision on the identical issue that has already been fully and fairly vetted before an administrative tribunal. And the U.S. Supreme Court in a story of federal savings had stated it well when they indicated that a party deserves no rematch after having fully and fairly litigated the issues. And the Department of Homeland Security not only did not appeal when they had the chance, but they also then took the additional step of kind of forcing us into USCIS and then reaching an entirely contrary decision. Counsel, the district court took the view that the law of collateral estoppel in this somewhat unusual context is uncertain. And given that uncertainty, the service was justified in effect disregarding the findings of the IJ and reaching its own determination as part of the adjustment of status process, reaching its own and contrary conclusion as to the admissibility issue. Do you disagree that the law is uncertain in the way the district court found, or is that just not relevant to the substantial justification issue? Well, I disagree that the case law is not developed on that point because, first off, the government does bear the burden of proving substantial justification, and that's on their uncertainties, according to the Ninth Circuit, do not necessarily mean that the government's action was substantially justified. Even on a brand-new issue of first impression, Ninth Circuit case law indicates that the government may nevertheless be not substantially justified, depending on the facts. And there is a case we cited to that point in our opening brief. But beyond that, the cases that were cited were actually very different cases, and those involved issues where you would have to, the facts, the relevant facts would have to have been considered implicit in the decision from earlier. For instance, the cases involved asylum interviews, where in order to get asylum you would have to not be a domestic terrorist. But later they argued that they were. And so you would have to assume that the decision was implicit in the earlier fact finder's finding. Here you don't have to assume anything. It was literally the reason for the hearing that day. Everything we discussed was on that factual issue. The judge's decision is clear. Counsel, can I interrupt? So one thing I found curious about this is, isn't USCIS and the immigration judges, aren't they both within the Department of Justice? No, USCIS is within the Department of Homeland Security. Oh, USCIS is Homeland Security? And immigration judges are within the Department of Justice, yes. So, I mean, they're separate entities. But they're both the U.S. government. What I don't understand is why they're not talking to each other. Why they're not, I mean, it's almost, I mean, it's almost not, to me it's almost like a principle of res judicata. It's the government. I mean, it's the same party taking two different positions. Exactly, Your Honor. And that's our concern is that I think they were talking to each other, Your Honors. I believe that the government, if you look through the transcript of the immigration court hearing, was really unhappy with the finding that my client was inspected and admitted. They were unhappy and didn't want to agree with that finding. And they didn't want to amend the charges to go forward with deportation. They rather decided that they would force us into applying with USCIS and then take a different tactic when we got to that stage, which is what they did. It put us in a standstill that we couldn't get out of until we filed a writ of mandamus and forced their hand. But I think that this was a case where the government didn't agree with the immigration judge and decided to ultimately countermand. Isn't the thing to do when they don't agree with the ruling is to petition for review to our court? They have the right to petition for review, don't they? Yes, Your Honor. Actually, they could have appealed to the Board of Immigration Appeals as an intermediary step from the decision of the immigration judge and then from there to the Ninth Circuit, and they chose not to do that. And instead, a different hand of the same government decided that the fact that it was adjudicated was no longer something they were going to bind themselves to. And so it was really a catch-22 situation. And unfortunately, for a family of limited means, they had to litigate in district court and ultimately come to the Ninth Circuit to resolve the issue of the attorney's fees. Counsel, just to return to the prevailing party issue, the motion to hold an abeyance, by its very nature, it seems like the district court was doing nothing more than giving the parties time to work out an agreement. A lot of history is set forth in that motion, what's been going on between the parties, and there is a description of what they hope to now work out. And they're asking the court to give it time to do that. Why does that decision to give the parties time to do something, why is that somehow a judicial imprimatur on the alteration of the status between the parties? Well, on that point, Your Honor, the district court itself agreed, even though it denied attorney's fees, agreed that its actions did materially alter the relationship between the parties. So the district court on that point agrees with us. It says that, right, in its decision. But the reason why, Your Honor, if we had, when you remand, when the district court remands a case based upon the voluntary agreement of the parties, and that terminates the entire litigation, this court has held that that is a, that that's sufficient, that that stamps it with the necessary judicial imprimatur. I don't think we should be penalized by the fact that the district court continued jurisdiction until we made sure all issues were resolved. I don't, I think that actually shows that the district court maintained jurisdiction to watch over the case as it was remanded, to make sure that the remand did what it was supposed to. And the decision to hold it in abeyance was actually requested by the government, as opposed to us moving forward on summary judgment, for instance. And so that, they themselves benefited from this act to hold it in abeyance, because they wanted to resolve it amongst the agreement of the parties. And that's fine. And we did that. But the pre-litigation conduct is what is important with regard to substantial justification for their position, not the post-litigation conduct. But also the fact that this was remanded with a specific caveat. The caveat was that they can't say that she wasn't inspected and admitted. They have to agree that she was inspected and admitted this time. And so when the court agrees that it will hold the case in abeyance while the parties remand it with a specific instruction now agreed upon, which is the relevant issue at the linchpin of this whole thing, and then we ultimately resolve it, and then we enter a consent decree with the court that memorializes all of our agreements, and the court enters that and allows that agreement to be judicially enforced through a separate action, that is an order. I don't think that you can get much more than that, unless we want to say that the Department of Homeland Security can just always change their mind later, remand it back. And even when there's a court order involved, a consent decree that entered by the court, that still allows them to just kind of say no harm, no foul, that's not what the Ninth Circuit precedent says. It says that DHS can still be accountable, even when they change their position. As long as there's a remand and there's an enforceable order, that that stamps it with the judicial and premature necessary. And I think that this case is a textbook example of exactly that. All right, Captain, we'll give you a couple of minutes for rebuttal, okay? Thank you. Your Honors, may it please the court, my name is Obad Olhak, and I'm representing the Department of Justice on this EJF fee denial out of the District of Montana. Your Honors, I would actually like to start with the second prong of EJF fees, and relate it to substantial justification, as it is the government's burden to prove. As Your Honor, Judge Lipaz, you've already recognized, there is no specific case law on point that relates to the issue of collateral estoppel. And that is relevant insofar as the USCIS, in this case, is looking at a different application than what went on in removal proceedings. As you know, in removal proceedings, there's two stages of removal proceedings. The first step is for the Department of Homeland Security to prove alienage, which it did. And then, once that is proved, it is the alien's burden to demonstrate that she is admissible into the United States. And that is required to be proved by clear and convincing evidence. Over here, the immigration judge found that she indeed did prove that she was admissible to the United States, and terminated the application. Now, when USCIS later looked at her application for adjustment of status, it was reviewing all the issues based on not only the factual record that was before the immigration judge, but also it was doing its duty of doing a de novo review of eligibility for adjustment, which has many prongs. And in doing so... Counsel. Yes, Your Honor. Counsel, can I ask you something? Why didn't the agency either amend the petition or appeal to the BIA? Your Honor is referring to removal proceedings. And I can't speak to what happened back in years ago when this removal proceeding occurred. That's what they should have done if they wanted to contest the decision of the IJ, right? Well, yes, that's correct, Your Honor. However, again, my point here is with respect to the benefits application, when USCIS is looking at a... But let me understand this. So the removal proceedings, that's within the Department of Homeland Security, even though DOJ lawyers are involved because that's what ICE is supposed to do, right? Correct. Okay. And USCIS is also within the Department of Homeland Security, right? That's correct, Your Honor. So it seems very odd that USCIS would say we're not going to abide by the IJ's order on this very issue. But, Your Honor, the issue is not so black and white. Because when USCIS... But there's been a decision by the IJ that this was adverse to you. You didn't appeal it. You didn't take any other measure. You sort of trot around to another agency where you know she has to go if she's going to get her green card. And then, I don't know what exactly happened. I doubt you know what exactly happened. And they took a contrary position. That just isn't right. It's the same department. It's the same government. It is. That is correct, Your Honor. It is the same department, the same government. But when USCIS took the evidence that it is required to do, there were different factual issues that arose before USCIS when compared to the factual issues that arose before the immigration judge. So when you compared the two records, they weren't exactly the same. The factual question was, was she inspected? The IJ ruled that yes. Yes. And when it comes to applying for an application for adjustment of status before USCIS, it is required by regulation to review that application de novo. And in doing so, it took an interview of Ms. Equihua, and it found that there were inconsistencies with the matter of her entry. In fact, the type of entry that happened here, that is alleged to have happened here, is what is known as a matter of quillanton entry. And that is this IJ. Right, that the IJ found happened here, right? Yes, Your Honor. But when she testified, well, when she gave her interview before USCIS, there were inconsistencies that arose between what she had said to the IJ and what she was now saying to USCIS, specific inconsistencies which go to the heart of whether or not a matter of quillanton entry had happened and occurred by credible evidence. Counsel, you know, your opponent says that everything that you say was new and considered by the service for the first time was actually part of the proceedings before the IJ. But most fundamentally, to reflect Judge Wardlaw's concern, the service is told as part of the application for adjustment of status that there's been this determination before the IJ. And it's their position that that finding should be binding on the service. They actually raise the issue of collateral estoppel. Yes. And the service simply ignores it, proceeds to do what it did without even acknowledging that that's an issue. In terms of substantial justification, they never attempt to justify what they're doing on the premise that, well, collateral estoppel doesn't apply here. They just simply ignore that entire issue. However, when confronted with the petition from Ann Davis, they seem to immediately cave on that issue because as part of the agreement that's worked out, they now say, well, we're not going to dispute that she was properly admitted. So it seems a little late in the day to be trying to justify what the government did prior to the lawsuit when the government never says a word about collateral estoppel until the lawsuit is filed. Your Honor, you're correct. In the USCIS's decision, there was no mention of this concept of collateral estoppel. However, in its decision denying Ms. Ikiwa's application, USCIS does acknowledge that there was a previous immigration proceeding. And then when comparing the fact that were present to USCIS in the interview, there were inconsistencies that arose. And to address what those inconsistencies are, they couldn't have been before the IJ because that statement, that interview was taken later in front of USCIS. And only when comparing the two could those inconsistencies come to light. Counsel, aren't you doing a post-talk rationalization here? I mean, this is all hypothetical, but that's what they did, right? No, Your Honor. It's not hypothetical. It's actually contained within USCIS's decision as to the matter of Quilantan entry. For example, the fact that before the IJ, she did not mention that her cousin was involved in bringing her to the port of entry. But in front of USCIS, she did. In front of the IJ, she indicated that she was behind the smuggler in line at the port of entry. But in front of USCIS, she mentioned that she was in front of the smuggler at the port of entry. And I mention these for the Court's consideration because these go directly to the credibility of whether she actually made a matter of Quilantan entry. When you're comparing the facts that were before USCIS versus the facts that were before the IJ, they don't match up. Counsel, can you show me where in the USCIS decision they cite the IJ's decision? Yes. I'm sorry, I don't know the actual record excerpt number, but it's Ms. Ikiwa's decision by USCIS dated October 31, 2014. That's ER 68, 69, 70, and 71?  I have the wrong document. Wait a second. 71. Okay. So you see in kind of the second full paragraph, last line, talking about how the attorney wrote that during your immigration hearing, the judge said, immigration judge, believed that he believed your story and found that you were lawfully admitted, and the judge ordered— Hold on a second, counsel. I'm looking at Judge Wardlaw, and I'm equally confused as to what you're reading. I have, in the excerpt of record, I have ER 68. It's a document, file stamped October 31, 2014, labeled decision. Yes. Is that what you're reading? Yes, and I apologize for not— Okay, so there are one, two, three, four pages of that document. Which page of that document are you reviewing? I apologize. The third page. The third page. That's ER 70. Yes, I apologize. And the paragraph starts with what? The paragraph starts with your spouse. Your spouse. So the second full paragraph. Okay, proceed. And I was reading from the last sentence, one of the last sentences, second-to-last sentence. He wrote that during your immigration hearing, the judge said he believed your story and found that you were lawfully admitted into the U.S. So from that sentence, we can see that USCIS was aware and had the benefit of the testimony before the immigration judge as compared to the statement that was given to it. And that's relevant because a collateral estoppel can't apply where the factual record is different. And it is the alien's burden to demonstrate that she is eligible for an immigration benefit. And USCIS held her to the burden when reviewing this application de novo. I would also note that the issue, an additional issue arose when that was never considered by the IJ when USCIS adopted in the matter of, in the, excuse me, in the abeyance order to not deny the application based on a matter of quillant and entry. And that was related to an alien smuggling charge. Now, an alien smuggling charge was not actually charged in the removal proceeding. And it could not have been charged because the IJ ultimately found that she was admitted. And so an inadmissibility charge under 1186A6E could not have been charged because that is an inadmissibility ground. The burden would have been different for an alien smuggling charge if the alien was considered admitted. And that would have been found under 1227A2E. So the burden would have been on the government to prove. So shifting burdens, there's no issue of res judicata there because Okay, counsel, Jesus, wasn't the alleged smuggling also before the IJ? Yes, Your Honor, it was. But it was never charged by the Immigration and Customs Enforcement. And I will also note that if it But notwithstanding that it was there, the IJ still ruled favorably to her. Yes, Your Honor, but it was never charged and it was never litigated. It was never actually litigated, which is a component of collateral estoppel, I will note. I will also note, Your Honors, that the standard of proof for demonstrating inadmissibility when charged, it's the alien's burden to prove by clear and convincing evidence that a ground of inadmissibility does not apply. However, when the same alien is applying for adjustment of status, the standard of proof for determining that an alien is or is not inadmissible, the burden is on the alien to demonstrate clearly and beyond a doubt. And that comes from 8 U.S.C. 1229a, little a, section C4, capital A. And that is a higher standard of proof that the alien is supposed to demonstrate the alien smuggling charge. And that was never actually litigated. So, again, the fact that the factual predicate in the record was different and that different issues arose before USCIS, the district court rationally found, reasonably found, that the government substantially justified in concluding, without binding case law to the contrary, that collateral estoppel was not an issue. And, again, given the shifting burdens, res judicata would also not be an issue. Finally, Your Honors, I'm about almost out of time, but I want to speak briefly on two points. And one of them is the fact that the district court judge found that even if the USCIS was collaterally stopped, its adverse credibility finding, making the adverse credibility finding, when comparing the record that was before it with the record that was before the immigration judge, when comparing the two records, that was reasonable. It was a reasonable adverse credibility finding for both plaintiffs. And this is relevant because the plaintiff has not challenged that factual finding as clearly erroneous. So, as a matter of fact, if USCIS's adverse credibility finding below is not clearly erroneous, it can't be considered an abuse of discretion for the district court to have denied each of these in this case. Counsel, given all these concerns that you've expressed about credibility and so forth, why did the department, once the lawsuit is filed, so readily agree to not go forward with this ground of inadmissibility? Basically, they said, we will now accept the finding of the ALJ in that removal proceeding. That agreement seems so contrary to everything that you're now saying about the concerns of the department about her admissibility. To answer your question, and if I could briefly have some more time to just finish answering your question. Thank you. First of all, the litigation position of the department of USCIS has not actually been challenged, and the district court recognized that, so that is not before this court. But to answer your question, only the underlying position of the agency is before this court. However, to answer your question, given that there is a question of whether collateral estoppel applies, and given that there is an open question, we'll say, of whether collateral estoppel applies, the USCIS determined at this level, at the district court stage, to go back and seek remand and litigate anew. It was not something that USCIS wished to litigate to this level. Did you litigate it? You entered an agreement, right? There wasn't another proceeding, was there? No, ma'am. No, your honor. There was no other proceeding. It was the issue of whether collateral estoppel applies was not litigated before the district court at all, and USCIS never actually conceded that it did apply. And again, that remains an open question of whether it actually does apply. And given those reasons, your honor, and additionally the factual predicate that was different before USCIS as compared to the record before the immigration judge, given those factors, the district court properly found that the government was substantially justified. And I apologize, your honors, I didn't get to talk about the prevailing party. Does the panel have any further questions of Judge Wardlaw? No? No, thank you. Thank you, counsel. Thank you, your honors. And thank you for this opportunity. It's my first circuit argument. Oh, very well. Congratulations. Thank you, your honor. I didn't get thrown out of here, so that's good. You've got three minutes of rebuttal. Okay. Thank you, your honors. The government mentioned the decision that was issued, and there are quibbles about different factual predicates that were before USCIS or not before the immigration court. But if you actually look into the excerpts of record, the entire transcript of the immigration court hearing is there. It was extensive. The issues of who was standing where and who was involved with the different factual matters, it was explored fully. And initially the government asserted that various things were not before the immigration court that we proved in our reply brief and the further excerpts of record that were, in fact, right before the immigration judge all along. But the decision that USCIS issued to deny adjustment of status, it doesn't mention the cousin. It doesn't mention any comparison between what the immigration court said and what USCIS found in their interview. There are no direct comparisons. There's really no acknowledgment other than that the immigration judge said he believed your story. They're undermining the significance of what happened before the immigration court by saying that it was a story that was believed. That's not what happened. The judge entered an order, and that order made factual determinations that they were bound to. There's no indication that anyone reviewed the transcript and compared it to the USCIS record until the writ mandamus was filed and until attorney's fees were requested. And now the government has gone through great lengths to try to find minor discrepancies here and there. There is absolutely no reason to believe that that's anything other than a litigation position. There's nothing in the record before it that indicates that. The fact is that the government made a mistake. They didn't adhere to the binding immigration judge decision. Litigation was required to compel them to remand and make a different decision. All of those agreements, whether voluntarily entered in by parties or not, was stamped with the judicial informatura necessary by the fact that the court entered two remand orders, hold and bains while it was remanded, and then ultimately entered a consent decree. So we've got material alterations of the relationship. We have a judicial order. And there's really no substantial justification that the government can point to to say why they just ignored the immigration judge decision and reached a different outcome. Yes, USCIS had a different interview that occurred. But pretty much everything that was sent to the immigration judge was sent to USCIS and backwards and forwards. And in any two interviews, you might get some different factual issues. They haven't proven that it was those particular facts that really, truly changed their mind, or that they even considered discrepancies at the time they made the decision. So there are no other questions. Thank you very much, counsel. Thank you both for your fine arguments and briefs in this case. Thank you. Thank you. This matter is submitted, and we are ‑‑ I guess this panel is actually adjourned. Isn't that right? This panel is adjourned. Thank you.
judges: Lipez, Wardlaw, Owens